CONCEPCIÓN E. LOZANO-BATISTA, Bar No. 227227
TRACY L. MAINGUY, Bar No. 176928
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
Telephone  (510) 337-1001
Fax  (510) 337-1023
E-Mail:  clozano@unioncounsel.net
          tmainguy@unioncounsel.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES, in their capacities as Trustees of the NORTHERN CALIFORNIA BAKERYAND CONFECTIONARY HEALTH AND WELFARE FUND, <br><br>            Plaintiffs, <br><br>     v. <br><br> FRESNO FRENCH BREAD BAKERY, INC. doing business as BASQUE FRENCH BAKERY, <br><br>            Defendant. | No. <br><br> **COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AND AUDIT (ERISA 29 U.S.C. §1001, ET SEQ., 29 U.S.C. §185)** |

Plaintiffs complain of Defendant, and for cause of action allege:

## JURISDICTION AND INTRADISTRICT ASSIGNMENT

### I.

This action arises under and is brought pursuant to section 502 of the Employee

Retirement Income Security Act, as amended (ERISA) (29 U.S.C. § 1132), and section 301 of the

Labor Management Relations Act (LMRA) (29 U.S.C. § 185).  Venue properly lies in this district

1
COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AND AUDIT
Case No.

1   court since contributions are due and payable in the County of San Francisco.  Therefore,

2   intradistrict venue is proper.

3                                        **PARTIES**

4                                           **II.**

5          At all times material herein, Plaintiffs The Board of Trustees were Trustees of the

6   Northern California Bakery and Confectionary Health and Welfare Fund (hereinafter "Trust

7   Fund").  At all times material herein, the above-named Trust Fund was, and now is, an employee

8   benefit plan created by a written Trust Agreement subject to and pursuant to section 302 of the

9   Labor Management Relations Act (29 U.S.C. § 186), and a multi-employer employee benefit plan

10  within the meaning of sections 3, 4 and 502 of ERISA (29 U.S.C. §§ 1002, 1003 and 1132).  The

11  above-named Trust Fund is administered by a Board of Trustees which may bring this action in

12  the name of the Trust Fund pursuant to the express provisions of the Trust Agreement for the

13  Trust Fund.  The above named Trust Fund and its respective Board of Trustees shall hereinafter

14  be designated collectively as "Plaintiff."

15                                          **III.**

16         At all times material herein, Defendant Fresno French Bread Bakery, Inc. doing business

17  as Basque French Bakery (hereinafter referred to as "Defendant"), has been an employer within

18  the meaning of section 3(5) and section 515 of ERISA (29 U.S.C. §§ 1002(5), 1145) and an

19  employer in an industry affecting commerce within the meaning of section 301 of the LMRA (29

20  U.S.C. § 185).

21                  **ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF**

22                                          **IV.**

23         At all relevant times, Bakery, Confectionary & Tobacco Workers Local 85 (hereinafter

24  "Union"), a labor organization within the meaning of section 301 of the Labor Management

25  Relations Act (29 U.S.C. § 185), and Defendant were signatory and bound to a collective

26  bargaining agreement.  A true and accurate copy of the collective bargaining agreement is

27  attached hereto as Exhibit "A" and incorporated herein by this reference.  The collective

28  bargaining agreement by its terms incorporates the Trust Agreement establishing the Plaintiff

**WEINBERG, ROGER &**
**ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

2

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AND AUDIT
Case No.

1  Trust Fund.  A true and accurate copy of the Trust Agreement is attached hereto as Exhibit "B"

2  and incorporated herein by this reference.  By said collective bargaining agreement, Defendant

3  promised that it would contribute and pay to Plaintiff the monthly amount required by the

4  collective bargaining agreement for eligible employees who performed work covered by said

5  collective bargaining agreement, and that it would be subject to and bound by all of the terms,

6  provisions and conditions of the Trust Agreement for the Trust Fund ("Trust Agreement")

7  (hereinafter the collective bargaining agreement and Trust Agreement are collectively referred to

8  as "Agreements").

9                                               **V.**

10        The Trust Agreement provides for prompt payment of all employer contributions to the

11  Trust Fund and provides for liquidated damages, not as a penalty but as a reasonable attempt to

12  provide for payments to cover the damages incurred by the Trust Fund in the event of a breach by

13  the employer where it would have been impracticable or extremely difficult to ascertain the losses

14  to the Trust Fund.  The Trust Agreement also provides for the payment of interest on all

15  delinquent contributions, attorneys' fees, other collection costs, and for the audit of the signatory

16  employer or employers' books and records in order to permit the Plaintiff to ascertain whether all

17  fringe benefit contributions have been timely paid as required by the Agreements and law.

18                          **FIRST CLAIM FOR RELIEF**
                  **(BREACH OF CONTRACT BASED ON AUDIT)**
19                                           **VI.**

20        Plaintiffs incorporate and reallege by reference all the allegations stated hereinabove.

21                                          **VII.**

22        Pursuant to the Agreements, an audit of the books and records of Defendant for the period

23  of January 1, 2012 to December 31, 2016 was conducted, which revealed that fringe benefit

24  contributions to the Trust Fund have not been submitted as required by said Agreements.

25                                          **VIII.**

26        Demand has been made of Defendant for payment of the amounts determined to be due

27  and owing pursuant to the audit.  To date, Defendant has refused to pay such amounts and there is

28  now due, owing and unpaid to Plaintiff Trust Fund from Defendant, fringe benefits contributions

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

3

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AND AUDIT
Case No.

1  in the amount of $15,903.97, liquidated damages and interest in the amount of at least $2,139.84

2  in relation to such unpaid contributions which have not been submitted to the Trust Fund as

3  required by said Agreements.

4  ### IX.

5  Plaintiff is the intended third-party beneficiary of the collective bargaining agreement.

6  Neither the Trust Fund nor the collective bargaining agreement evidence an intention to require

7  the Health and Welfare Trust Fund to arbitrate disputes under the grievance procedure of the

8  collective bargaining agreement.  The Trust Fund is not required to exhaust the arbitration

9  procedure of the collective bargaining agreement before seeking to enforce the Trust Agreement.

10  ### X.

11  Plaintiff has complied with all conditions on their part to be performed under the terms of

12  the applicable Agreements.

13  ### XI.

14  Plaintiff is entitled to reasonable attorneys' fees, interest, and other reasonable expenses

15  incurred in connection with this matter due to Defendant's failure and refusal to pay all fringe

16  benefit contributions due and owing pursuant to the terms of the applicable Agreements, and

17  ERISA section 502(g)(2) (29 U.S.C. § 1132(g)(2)).

18  ### SECOND CLAIM FOR RELIEF
19  **(ACTUAL DAMAGES FOR BREACH OF CONTRACT)**
### XII.

20  Plaintiff incorporates and realleges by reference all the allegations stated above.

21  ### XIII.

22  Defendant failed, neglected and refused to make timely fringe benefit contributions as

23  required by the applicable Agreements, and has caused Plaintiff actual damages in an amount to

24  be proven at trial.

25  ### THIRD CLAIM FOR RELIEF
26  **(AUDIT)**
### XIV.

27  Plaintiffs incorporate and reallege by reference all the allegations stated above.

28  //

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

4
COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AND AUDIT
Case No.

**XV.**

Plaintiff believes that additional amounts may be due and owing and also pray for an audit to determine same.

**WHEREFORE**, Plaintiff prays judgment against Defendant as follows:

1. That Defendant be ordered to pay contributions in the amount of $15,903.97, liquidated damages and interest in the amount of at least $2,139.84 based on the audit of Defendant's books and records;

2. That Defendant be ordered to pay actual damages according to proof;

3. That Defendant be compelled to submit to an audit by Plaintiff;

4. That this Court issue an Order permanently enjoining Defendant, for so long as it remains obligated to contribute to the Trust Fund, from failing to timely submit required monthly contributions reports and payments as required by the terms of the Agreements and ERISA sections 502(a)(3) and (g)(2), (29 U.S.C. § 1132(a)(3), (g)(2));

5. That Defendant be ordered to pay Plaintiff's attorneys' fees;

6. That Defendant be ordered to pay costs of suit herein; and

7. That the Court grants such further relief as this Court deems just and proper.

Dated:  January 28, 2019

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By:  */s/ Tracy L. Mainguy*
TRACY L. MAINGUY
Attorneys for Plaintiffs

146636\1007706

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AND AUDIT
Case No.

# EXHIBIT A

# WHOLESALE FRENCH BAKERY AGREEMENT

## FRESNO AREA

**THIS AGREEMENT**, made and entered into this Sixth day of July, 2008, through and including July 2, 2011, by and between **Basque French Bakery** of Fresno and Fresno County, California, hereinafter known as the Company and Employer, and **Bakery, Confectionery, Tobacco Workers and Grain Millers' International Union, Local No. 85**, Sacramento, California, hereinafter known as the Union.

## W I T N E S S E T H:

## SECTION 1—CONDITIONS GOVERNING EMPLOYMENT:

**(A)**     It shall be a condition of employment that all of the Employer's employees in the contractual bargaining unit who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing for the term of this Agreement; those employees in the unit who are not members on the effective date of this Agreement shall become Union members on the 31st day following the effective date of this Agreement and remain good-standing members for the term of this Agreement; all new employees hired after the effective date of this Agreement shall become Union members on the 31st day following the beginning of such employment and remain good-standing members for the duration of this Agreement.   Tender of Union periodic dues and initiation fee uniformly required as a condition of acquiring or attaining such membership, shall, for the purpose of this Section, be considered membership in good standing in the Union.

**(B)**     The Employer hereby agrees to check-off non-discriminatory Union dues from Union employees' weekly pay checks in accordance with the following:

Said check-off shall be authorized in writing by the employee in a form consistent with the law.  Said check-off forms shall be presented to the Employer by the Union after signature of the employee has been obtained for authorization.

The Employer agrees to deduct assessments provided the employee signs a separate authorization card and the Union notifies the Employer in writing of any assessments at least ten (10) days prior to the pay day on which such deduction is to be made.

The Employer shall incur no personal liability for the payment of any such dues and shall not be liable to the Union until deductions have actually been made from the employees' checks in accordance with the previously signed check-off authorization form.

The amount checked off during any calendar month shall be remitted by means of a bank check made out to the order of the Union and mailed to the business address of the Union no later than the 10th day following the last Friday of that calendar month. Any amount checked off of any employee's pay check in accordance with this Section shall be noted on the deduction statement given to the employee.

## SECTION 2—PROBATIONARY EMPLOYEES:

**(A)**    New employee shall be termed probationary employees and shall be on a probationary status for sixty (60) days worked. Time off for illness, injury, layoff, strike, or other interruption of employment shall not be credited toward the completion of the probation period. Except as provided in Section 22—Non-Discrimination Clause, the layoff, discharge, termination or discipline of probationary employees shall be without recourse by the employee to the grievance procedure of this Collective Bargaining Agreement.

**(B)**    A probationary employee who resumes work for the Employer following a termination or layoff due to reduction in force shall receive credit toward completion of his probationary period for all days previously worked.    The maximum number of days previously worked for which such credit shall be allowed shall be 25.    No credit shall be allowed for any days worked occurring more than twelve (12) months prior to the date the employee resumed work.

## SECTION 3—DISMISSALS, LAY-OFFS, AND LEAVES OF ABSENCE:

**(A)**    Seniority is the right accruing to employees through length of service with an individual Employer which entitles them to appropriate preference in lay-offs, re-hiring, shift assignments, and promotion; provided the employee possesses the qualifications necessary to satisfactorily perform the work available.    Seniority shall be applied on a plant-wide basis as set forth herein, and shall be determined and measured by length of continuous service with each individual Employer.

**(B)**    In cases of promotion, ability and qualifications being equal, seniority shall be a key factor in recognizing such preference.

## SECTION 4—WORK DAY - WORK WEEK:

**(A)**    The work week for all employees shall consist of five (5) non-consecutive days, and the work day shall be eight hours. Overtime shall be paid for all hours worked in excess of eight (8) hours in any work day or forty (40) hours in any work week. The Employer will not arbitrarily change the employees' starting times without business necessity.

**(B)**    All time worked in excess of a regular work day or work week as defined above shall be paid for at the rate of time and one-half.

## WHOLESALE  FRENCH  BAKERY  AGREEMENT

## FRESNO  AREA

**THIS AGREEMENT**, made and entered into this Sixth day of July, 2008, through and including July 2, 2011, by and between **Basque French Bakery** of Fresno and Fresno County, California, hereinafter known as the Company and Employer, and **Bakery, Confectionery, Tobacco Workers and Grain Millers' International Union, Local No. 85**, Sacramento, California, hereinafter known as the Union.

## W I T N E S S E T H:

## SECTION 1—CONDITIONS GOVERNING EMPLOYMENT:

**(A)**     It shall be a condition of employment that all of the Employer's employees in the contractual bargaining unit who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing for the term of this Agreement; those employees in the unit who are not members on the effective date of this Agreement shall become Union members on the 31st day following the effective date of this Agreement and remain good-standing members for the term of this Agreement; all new employees hired after the effective date of this Agreement shall become Union members on the 31st day following the beginning of such employment and remain good-standing members for the duration of this Agreement.     Tender of Union periodic dues and initiation fee uniformly required as a condition of acquiring or attaining such membership, shall, for the purpose of this Section, be considered membership in good standing in the Union.

**(B)**     The Employer hereby agrees to check-off non-discriminatory Union dues from Union employees' weekly pay checks in accordance with the following:

Said check-off shall be authorized in writing by the employee in a form consistent with the law.  Said check-off forms shall be presented to the Employer by the Union after signature of the employee has been obtained for authorization.

The Employer agrees to deduct assessments provided the employee signs a separate authorization card and the Union notifies the Employer in writing of any assessments at least ten (10) days prior to the pay day on which such deduction is to be made.

The Employer shall incur no personal liability for the payment of any such dues and shall not be liable to the Union until deductions have actually been made from the employees' checks in accordance with the previously signed check-off authorization form.

The amount checked off during any calendar month shall be remitted by means of a bank check made out to the order of the Union and mailed to the business address of the Union no later than the 10th day following the last Friday of that calendar month. Any amount checked off of any employee's pay check in accordance with this Section shall be noted on the deduction statement given to the employee.

## SECTION 2—PROBATIONARY EMPLOYEES:

**(A)**     New employee shall be termed probationary employees and shall be on a probationary status for sixty (60) days worked. Time off for illness, injury, layoff, strike, or other interruption of employment shall not be credited toward the completion of the probation period. Except as provided in Section 22—Non-Discrimination Clause, the layoff, discharge, termination or discipline of probationary employees shall be without recourse by the employee to the grievance procedure of this Collective Bargaining Agreement.

**(B)**     A probationary employee who resumes work for the Employer following a termination or layoff due to reduction in force shall receive credit toward completion of his probationary period for all days previously worked.   The maximum number of days previously worked for which such credit shall be allowed shall be 25.   No credit shall be allowed for any days worked occurring more than twelve (12) months prior to the date the employee resumed work.

## SECTION 3—DISMISSALS, LAY-OFFS, AND LEAVES OF ABSENCE:

**(A)**     Seniority is the right accruing to employees through length of service with an individual Employer which entitles them to appropriate preference in lay-offs, re-hiring, shift assignments, and promotion; provided the employee possesses the qualifications necessary to satisfactorily perform the work available.  Seniority shall be applied on a plant-wide basis as set forth herein, and shall be determined and measured by length of continuous service with each individual Employer.

**(B)**     In cases of promotion, ability and qualifications being equal, seniority shall be a key factor in recognizing such preference.

## SECTION 4—WORK DAY - WORK WEEK:

**(A)**     The work week for all employees shall consist of five (5) non-consecutive days, and the work day shall be eight hours. Overtime shall be paid for all hours worked in excess of eight (8) hours in any work day or forty (40) hours in any work week. The Employer will not arbitrarily change the employees' starting times without business necessity.

**(B)**     All time worked in excess of a regular work day or work week as defined above shall be paid for at the rate of time and one-half.

**(C)**     A Wrapping Machine Operator shall be in charge of the complete operation of the wrapping machine and shall be responsible for all machine adjustments and paper changes in the machine.

**(D)**     In the event that a member is sent home before his maximum hours are put in, he is entitled to a minimum of four (4) hours of work or pay in lieu thereof.

**(E)**     Daily and weekly overtime at the rate of time and one-half shall apply in a holiday work week on the following basis: In a holiday work week, all regular employees shall be required to work only four (4) days, but they shall be paid for a full forty (40) hour work week.

**(F)**     Overtime shall be paid for all hours worked in excess of eight (8) hours in any work day or thirty-two (32) hours in the holiday work week.

**(G)**     All employees who work six (6) days in a work week shall be paid at the rate of time and one-half (1½) for hours worked on the sixth (6th) day, it being understood that an employee's holiday shall be considered as a day worked.

## SECTION 5—SCHEDULE:

**(A)**     All bakery workers under the jurisdiction of the Union shall report for work at any hour suitable to the Employer except as provided in this Section. Each employee shall have an unbroken rest period of not less than twelve (12) hours between shifts. In addition to this, each employee is entitled to one (1) full day, twenty-four (24) hours, on each of his days off. The twelve (12) hour requirement may be shortened to facilitate production when a holiday occurs. The shortening of the twelve (12) hour rest period is limited to one (1) day in each week to each employee.

**(B)**     In the event of a change in starting time, employees shall be notified not later then the end of the shift what time to report for work on the following day.  This should not apply to unplanned production demands or emergencies.

**(C)**     Employees will go to work and cease work according to Pacific Coast time, and either Saturday or Sunday shall be the day off in the case of all steady employees.

## SECTION 6—GENERAL CONDITIONS:

**(A)**     There shall be a foreman in charge of each shift. Superintendents shall not perform any work in the classifications as set forth in Section 7, hereof in excess of one-half shift or three and three-quarters (3-3/4) hours per day, except in cases of an emergency. One apprentice shall be allowed to one, two, three, four, five, six or seven journeymen and thereafter to the major fraction thereof, provided the foreman is present at all times during the shift. However, the foreman shall not be required on the shift until the dough is ready for the divider or bench.

**(B)**     Proprietors and production managers who act as foreman shall be entitled to one apprentice, provided the proprietor or production manager is present at all times.

**(C)**     An apprentice will not be allowed to perform any duties of a journeyman unless a foreman is present on the shift. Apprentices shall not be allowed to work more than one-half (1/2) of a shift on the bench, ovens, or machines, or perform any other class of work that is considered the work of a journeyman baker.

**(D)**     Miscellaneous workers shall not be allowed to aid or assist in any way such as preparing fruits, nuts, crumbs, raisins or any other work that is classed as apprentice or journeyman work in manufacturing bakery products.

**(E)**     In shops where peel ovens are used, the unskilled workers shall not be allowed to help in loading or unloading the ovens. However, they shall be allowed to rack the product after it is dumped.

**(F)**     The employer agrees that he will not require more than a reasonable day's work from any employee.

**(G)**     Any person receiving more than the scale specified herein shall not suffer any loss in pay during the life of this Agreement.

**(H)**     Employees shall not lose seniority during the first twelve (12) months of absence due to a disability, so long as the employee's absence is certified by a physician. However, this does not preclude the Employer from sending the employee to a physician of its choice to determine whether the disability renders the employee unfit for duty.

**(I)**     The Employer shall not release employees who are disabled resultant to a work-related injury in violation of State of California Workers' Compensation Law.

**(J)**     Any employee mixing dough more than three (3) hours per day shall receive dough mixer's wages, while employees working on the oven more than three (3) hour per day shall receive Oven Operator's wages.

**(K)**     An employee injured on the job who must as a result leave his or her job during working hours shall nevertheless receive a full day's pay.

    **(L)**     The Employer agrees that should the Local Union desire to combine the Dental Fund and Health and Welfare Fund, the Union may do so as long as the cost of a dental plan does not exceed the maximum amount allowable under this Agreement per employee per month.

## SECTION 7—WAGES AND JOB CLASSIFICATIONS:

Baking, Wrapping, and Miscellaneous
Effective July 1, 2007

|  | Straight Time | 8 Hour Shift | Time and One-half | 40 Hour Week |
|---|---|---|---|---|
| Foreperson, not less than | $15.85 | $126.80 | $23.78 | $634.00 |
| Dough Mixer, not less than | 15.15 | 121.20 | 22.73 | 606.00 |
| Oven Operator, not less than | 15.15 | 121.20 | 22.73 | 606.00 |
| Bench Hand, not less than | 14.88 | 119.04 | 22.32 | 595.20 |
| Baker's Helper, not less than | 14.69 | 117.52 | 22.04 | 587.60 |
| Apprentice/Starting | 13.19 | 105.52 | 19.79 | 527.60 |
| Apprentice/2nd 6 months | 13.46 | 107.68 | 20.19 | 538.40 |
| Apprentice/3rd 6 months | 13.97 | 111.76 | 20.96 | 558.80 |
| Apprentice/4th 6 months | 14.50 | 116.00 | 21.75 | 580.00 |
| Packers, not less than | 13.85 | 110.80 | 20.78 | 554.00 |
| Sanitor or Unskilled, not less than | 13.97 | 111.76 | 20.96 | 558.80 |
| Part-time Sanitor, not less than | 10.85 | 86.80 | 16.28 | 434.00 |
| Thrift Store/Office, not less than | 12.88 | 103.04 | 19.32 | 512.20 |

New Hires shall be paid at a rate of 70% of the job rate in the classification for the first eight (8) months, 80% of the job rate for the next eight (8) months, and 90% of the job rate for the next eight (8) months. Employees shall receive 100% of the job rate in the classification they are working after twenty-four months have elapsed.

**Lump Sum Bonus: For each bargaining unit employee on the payroll as of July 1, 2009, and actively employed on the date of payment of this bonus, shall receive a Christmas Bonus as follows:**

**All classifications shall receive a Christmas Bonus of $300.00 not later than December 18, 2009;**

**All classifications shall receive a Christmas Bonus of $300.00 not later than December 17, 2010.**

## SECTION 8—PART-TIME OR ON-CALL:

**(A)** Part-time or on-call help employed in any department shall receive ten (10) cents per hour more than the scale specified for steadily employed help. Part-time or on-call help shall be guaranteed a minimum of four (4) hours' work or pay in lieu thereof for each shift for which they are called to work. Members working less than a full week shall receive part-time wages.

**(B)** When help is ordered for any department and such help reports for work and is then sent home, such help shall receive payment in full for the hours that the employee had been scheduled to work if the employee is capable of performing the work.

**(C)** The Part-time sanitor position may be scheduled as needed.

## SECTION 9—HOLIDAYS:

The following holidays shall be observed:

| | |
|---|---|
| New Year's Day | Washington's Birthday |
| Memorial Day | Fourth of July |
| Labor Day | Veterans' Day |
| Thanksgiving Day | Christmas Day. |

**(A)** Time and one-half pay shall prevail on all work performed on a holiday except there shall be no work performed on Thanksgiving day or Christmas day, when these fall on a Tuesday, Wednesday or Thursday.

**(B)** Each employee shall be entitled to his day off on Saturday or Sunday except in a week when a holiday occurs; either the holiday itself shall be observed or the preceding day. The Saturday or Sunday day off shall not apply to the first shift sponge setter and dough mixer.

**(C)** To be eligible for holiday pay, an employee must actually work in the work week in which the holiday falls and must be available or report for work upon the request of the Employer on the scheduled day before and the scheduled day following said holiday, unless due to a death in his immediate family, as defined in this Agreement.

## SECTION 10—PARTNERSHIP:

In case of a partnership, only one partner is allowed to work in the shop without belonging to the Union.

## SECTION 11—PLANT VISITS:

The Business Agent will be allowed admission to any shop at all times with proper credentials.

## SECTION 12—PAY DAY:

Each employee shall receive his pay on the shop's recognized pay day.

## SECTION 13—RELIEF PERIODS:

**(A)**    An unpaid meal period of thirty (30) minutes shall be allowed and taken by all employees between the third and fifth hour of their shift.

**(B)**    A ten (10) minute rest period shall be allowed each employee for each half day worked.

## SECTION 14—VACATIONS:

**(A)**    Each employee shall receive vacation with pay according to the following schedule:

| Years of Service | Calendar Weeks of Vacation and Pay |
|---|---|
| 1 | 1 |
| 2 | 2 |
| 12 | 3 |
| 25 | 4 |

**(B)**    Vacation pay shall be paid immediately preceding the vacation period at the straight time hourly rate in effect at the time the employee receives vacation pay.

**(C)**    If an employee leaves the employment of the Company after one (1) year of service, he shall receive pro-rata vacation accrued since his last anniversary date based on the number of straight time hours worked since the employee's last anniversary date. Said pro-rata vacation shall be in addition to any vacation due as of the employee's last anniversary date, if he has not received same.

**(D)**    Vacations shall be granted according to the regular calendar week, and employees(s) shall be given vacations according to seniority whenever practical. The Employer agrees to schedule vacations during holiday weeks, but reserves the right to determine the number so scheduled. When a holiday occurs during a vacation, the Employer shall designate either an extra day off with pay or shall pay the employee one (1) extra day's pay for the holiday.

(E)    The total accumulated lapse of service of thirty (30) calendar days per year because of illness, injury, or layoff shall not diminish the vacation period due as herein provided.

If an employee accumulates in excess of thirty (30) calendar days of absence because illness, injury, or layoff, his vacation shall be pro-rated on his anniversary date based on the formula set forth in Paragraph (C) this section, except that the employee shall be credited with the thirty (30) days. An employee may be allowed to extend his vacation up to two (2) weeks in addition to his vacation time provided, however, that he has received prior written permission from the Company.

(F)    Employees may not waive vacation time and receive pay in lieu thereof, except as provided in Paragraph (D) above.

## SECTION 15—BOARD OF ADJUSTMENT:

(A)    Violations of this Agreement shall be presented by the representative of the Union to the Company or its representative and they shall attempt to settle such controversies amicably.

(B)    If the controversy cannot be thus settled, it shall be submitted to a Board of Adjustment within seven (7) days, which shall consist of two (2) representatives chosen by the Union and two (2) representatives chosen by the Company. These four (4) selected shall take up such matters within three days after receiving the complaint, and shall reach a majority decision within three (3) days thereafter. The decision of the Board of Adjustment, so convened, shall be final and binding on both parties.

(C)    If the dispute cannot be settled by the Adjustment Board, the four (4) members of the Adjustment Board shall select a neutral fifth person within three (3) days. If at the end of three (3) days the members of the Adjustment Board cannot agree upon a neutral fifth party, they shall jointly petition the Federal Mediation and Conciliation Service (FMCS), Regional office for the fifth member. These five (5) members shall then become the Arbitration Board and hear both sides within five (5) days after the selection of the neutral fifth party, and shall reach a majority decision within seven (7) days, which shall be final and binding upon both parties and shall be retroactive to the day of the beginning of the dispute.

(D)    During such time as such matters are pending, there shall be no stoppage of work provided that both parties follow the proceedings set forth in Paragraphs (A) and (B) of Section 26 without undue delay.

(E)    Each of the parties hereto warrants that it is under no disability of any kind that will prevent it from completely carrying out and performing each and all of the provisions of this Agreement, and further, that it will not take any action of any kind that will prevent or impede it in the complete performance of each and every provision hereof. This Agreement contains all the covenants, stipulations and provisions agreed upon by the parties hereto, and no representative of either party has authority to make, and none of the parties shall be bound by any statement, representation, or agreement not set forth herein.

## SECTION 16—SUCCESSOR:

The Agreement shall be binding upon the successors and assigns of the parties hereto; and no provisions, terms or obligations herein contained shall be affected, modified, altered or changed, in any respect whatsoever by the consolidation, merger, sale, transfer, or assignment of either party hereto, or affected, modified, altered or changed in any respect whatsoever by any change of any kind in the legal status, ownership or management of either party hereto, or by any change, geographical or otherwise, in the location of the place of business of either party hereto.

## SECTION 17—HEALTH AND WELFARE - PRESCRIPTION DRUGS – VISION:

(A)     There is a Health and Welfare, Prescription, Drug and Vision plan to be financed by Employer contribution for each eligible employee, and which will also include and provide for Retiree coverage.

An eligible employee as used in this Section shall mean an employee who works seventy (70) hours or more during a calendar month for a single Employer or who has retired with a pension under the B&C Pension Fund.

**It is understood and agreed that, effective July 7, 2008, the current Employer contribution of Eight Hundred and Seventeen Dollars ($817.00) per month per covered employee is the Employer's sole obligation in regards to the rate of contribution.** In order that the same benefits, whether life insurance, accidental death and dismemberment, base hospital medical, major medical, prescription drugs, and vision as are in effect on July 7, 2008, may be maintained throughout the life of this Agreement. It is further understood and agreed that the Employer shall provide additional amounts into the Health and Welfare Plan as follows during the term of this Agreement:

**Employee Health and Welfare contribution to be no less than $25.00 per week for each year of the Agreement.**

**On or subsequent to the second year of this Agreement, May 1, 2009, the Employer shall provide an amount of up to Seven Hundred and Fifty-Eight Dollars and Sixty-Seven Cents ($758.67) to the then existing contribution, if needed;**

**On or subsequent to the third year of this Agreement, May 1, 2010, the Employer shall provide an amount of up to Eight Hundred and Eight Dollars and Sixty-Seven Cents ($808.67) to the then existing contribution, if needed.**

**Any amount that is unused in any year may be carried forward from year to year.**

Exhibit A

In the event the amount of the contribution required by the Health and Welfare and/or Dental Trust Funds are at any time greater than the amount required to be paid by the Employer under the terms of this Agreement, the difference shall be paid to the Trust Funds by means of an employee payroll deduction to be taken by the Employer in pre-tax dollars and paid to the Trust Fund along with the Employer's regular monthly contribution or, the Trustees shall be instructed to reduce the benefit level.

If any of the amount set forth in the first year (1st) of the Agreement, noted first above, is not needed to satisfy any potential contribution increase, therefore, that unused amount may be rolled-over to the third (2nd) year of the Agreement as needed. Any unused amounts in the first two (2) years of the Agreement may be rolled-over to the third (3rd) year of the Agreement if needed.

For the purposes of this Section, it is understood that contributions shall be payable on behalf of employees from the first day of employment, whether said employees are permanent, temporary or seasonal, or full-time or part-time employees, and regardless of whether or not they are members of the Union. It is further understood that each hour paid for including hours of paid vacation, paid holidays, and other hours for which pay is received by the employee in accordance with the Collective Bargaining Agreement, shall be counted as hours for which contributions are payable.

Payments shall be made monthly to a trust fund. The parties shall execute a trust agreement to govern operation of the fund, said agreement to provide for equal representation of Employers and the Union on the Board of Trustees.

The Employer hereby agrees to become a party to the Agreement and Declaration of Trust establishing the new Health and Welfare fund, and agrees to be bound by all the terms and provisions of said Agreement, a copy of which is annexed to this Collective Bargaining Agreement and made a part thereof. The Employer further agrees irrevocably to designate as its representative on the Board of Trustees of the Fund, such Trustees as are named in said Agreement and Declaration of Trust as Employer Trustees together with their successors selected in the names provided in the said Agreement, and agrees to be bound by all the action taken by the said Employer Trustees pursuant to the said Agreement and Declaration of Trust.

The Board of Trustees shall be empowered to secure adequate health and welfare coverage for the employees covered and to dispose of any surplus funds which may accumulate, provided such funds are used for the purpose of health and welfare benefits or as otherwise provided in the trust agreement.

**(B)** It is agreed that all contributions shall be made at such times and in such manner as the Trustees require; and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Welfare Fund.

**(C)**     If the Employer fails to make contribution to the Fund within thirty (30) days after the date required by the Trustees, the Local Union, in addition to any right the Trustees may have, shall have the right on forty-eight (48) hours written notice to take whatever steps are necessary to secure compliance with the Section, any provisions of the Collective Bargaining Agreement, including the no-strike clause, to the contrary notwithstanding. It is expressly understood that the Employer's liability for payment hereunder shall not be subject to the grievance or arbitration procedure of the Collective Bargaining Agreement and that the No-strike Clause, if any, shall not prohibit any action the Union chooses to take to compel payment of contributions. The Employer shall be liable for all costs incurred in collecting the payments due hereunder, together with attorneys' fees and such penalties as may be assessed by the Trustees.

1.     The parties agree and represent that there is no other agreement between them regarding welfare benefits, other than this Section, presently in effect. The parties further agree that no agreement regarding welfare benefits other than this Section shall be effective during the period covered by the said Collective Bargaining Agreement, except with the consent of the Board of Trustees.

2.     This Section shall be binding upon the parties hereto, their successors, administrators, executors and assigns.    The Employer shall give prior notice in writing of this Section to any purchaser, transferee, lessee, assignee or other successor in interest.  A copy of such notice shall be furnished to the Trustees not later than four (4) days after the effective date of the transaction. The Employer agrees that its failure so to notify its successor and the Trustee will continue to operate its obligation under this Section.

3.     If at any time during the term of this Agreement, or any renewal or amendment thereof, there should be enacted any Federal or State laws or regulations requiring the Employer to secure, provide or pay for insurance or welfare benefits or coverage of the type being provided by the Fund to employees covered hereunder, it is understood that the aforesaid plan of benefits provided by the Fund may have to be varied in compliance with such new law. If such law does not permit the Fund to assume and discharge the employer's obligation, the Employer may, upon 30 days' written notice to the Union, reopen this Agreement solely for the limited purpose of reviewing the amount of Employer contributions to the Fund. It is understood, however, that the benefits required by the present Unemployment Compensation Disability Law of the State of California are being provided and will continue to be provided by means other than the Employer contributions to the above Fund.

4.     All of the foregoing is subject in all respects to the provisions of the Labor-Management Relations Act of 1947, and to any other applicable laws.

**(D)**     This Health and Welfare Agreement and the Trust Agreement shall continue in effect to the expiration date of **July 2, 2011**, of the Collective Bargaining Agreement between the parties hereto.

**(E)**     By the execution of this Collective Bargaining Agreement, the individual Employer and/or Employer's Association signatory hereto, adopts and agrees to be bound by that certain Agreement and Declaration of Trust entitled Northern California Bakery and Confectionery Health and Welfare Trust and by all obligations, plan rules, amendments, modifications or changes thereof, made by the parties thereto as are not or may hereafter be established by said trust. The individual Employer further agrees and hereby does irrevocably designate and appoint the Employer the selection, removal and substitution of Trustees or Board members as provided in the Trust Agreement or as may be hereafter provided for pursuant to said Trust Agreement.

## SECTION 18—DENTAL CARE:

**(A)**     The Employer will contribute to the B & C Western Conference Dental Fund the sum of Fifty-One Dollars and fifty cents ($51.50) per month for each covered employee who has received pay for seventy (70) or more hours during the previous month and from whom contributions are due and payable under the terms of the Agreement and Declaration of Trust, dated April 1, 1965, providing for said Fund.  The Employer hereby agrees to be a party of said Trust Agreement and to be bound by all of the terms and provisions thereof, as presently in effect and as may be amended from time to time.  The Employer shall have all the rights and obligations set forth in said Trust Agreement.

**(B)**     The Employer further agrees irrevocably to designate as its representatives on the Board of Trustees of the Fund the Trustees named in said Trust Agreement as Employer Trustees and to the selection of their successors as provided in said Trust Agreement, and agrees to be bound by all the actions taken by said Employer Trustees pursuant to said Trust Agreement.

**(C)**     If the Employer fails to make the required contributions to the Dental Fund within thirty (30) days after the Trustees have determined that such Employer is delinquent with respect thereto, the Local Union, in addition to any rights the Trustees may have, shall have the right, on forty-eight (48) hours written notice, to take whatever lawful steps the Union deems necessary, or desirable to secure compliance with this Section, any provision of this Collective Bargaining Agreement, including the no-strike clause, to the contrary notwithstanding. It is expressly understood that a determination by the Trustees that an Employer is delinquent with respect to the payment of Dental Fund contributions shall not be subject to the grievance or arbitration procedure of this Collective Bargaining Agreement and the no-strike clause shall not prohibit any action the Union chooses to take to compel payment of said contributions.

**(D)**     Copies of any renewal or extension of this Agreement will be promptly furnished to the Dental Fund office, and if not consistent with the provisions of the B & C Western Conference Dental Fund Trust Agreement, can be used by the Trustees as the basis for termination of participation of the Employer.

**(E)** For the limit on added contributions by the Employer, refer to Section 17 at subsection (A).

## SECTION 19—PENSIONS:

It is hereby agreed to provide pension and retirement benefits as follows:

**(A)** The Employer hereby agrees to be bound as a party by all the terms and provisions of the Agreement and Declaration of Trust dated September 11, 1955, as amended, establishing the Bakery and Confectionery Union and Industry International Pension Fund (hereinafter called the Fund) and said Agreement is made part hereof by reference.

**(B)** Commencing with the **Effective Date(s) stated in paragraph(C)**, the Employer agrees to make payments to the Pension Fund for each employee working in job classifications covered by a Collective Bargaining Agreement between the Union and the Employer as follows:

For each day or portion thereof, which an employee works in such a job classification or receives pay in lieu of work (such as holiday, vacation, pro-rata vacation, and severance pay), the Employer shall make a contribution as stated in Paragraph (C) to the Pension Fund, but not more than the stated amount in Paragraph (C), per week for any one employee. (The stated maximum does not apply to pro-rata vacation or severance pay.)

Contributions shall be paid from the first day the employee begins working in a job classification covered by the Collective Bargaining Agreement between the Employer and the Union, and shall be paid on behalf of all employees in covered job classifications—there are no exceptions for employees who are not members of the Union, temporary, seasonal, or part-time employees, for leased employees or for any other type of employee. The term "employee" does not include a self-employed person, corporate officer, owner, or partner as defined in Section 1.09 of the Pension Fund Rules and Regulations.

**(C)** The payments made in accordance with (B) above shall be allocated as follows:

|  | Effective December 1, 2006 |
| --- | --- |
|  | Rate: |
| Plan A | $12.00 |
| Plan C | $ 1.84 |
| Plan G | $ 2.76 |
| Total Daily | $16.60 |
| Maximum Weekly | $83.00 |

**(D)**    It is agreed that the Pension Plan adopted by the Trustees of the Pension Fund shall be such as will qualify for approval by the Internal Revenue Service of the United States Treasury Department, so as to enable the Employer to treat contributions to the Pension Fund as a deduction for income tax purposes.

**(E)**    Contributions provided for herein shall be paid monthly and shall be accompanied by a completed remittance report.  Both payment and report are due on the tenth day of the month following the month covered by the report. In the event the Employer fails promptly to pay amounts owed, the Employer shall pay such collection costs, including court costs and reasonable attorneys' fees, as the Pension Fund shall incur, and shall pay interest at such rate as the Trustees shall fix from time to time.

**(F)**    The payments so made to the Pension Fund shall be used by it to provide retirement benefits for eligible employees in accordance with the Pension Plan of said Fund, as determined by the Trustees of said Fund, to be applied to the eligible employees based on the amount of Employer contribution.

**(G)**    This clause encompasses the sole and total agreement between the Employer and the Union with respect to pensions or retirement. If any other agreement between the Employer and the Union (including the Collective Bargaining Agreement) contains provisions inconsistent with this clause, those inconsistent provisions shall have no force or effect with respect to the obligations and agreements set forth herein.

**(H)**    This clause is subject in all respects to the provisions of the Labor-Management Relations Act of 1947, as amended, and to any other applicable laws.

**(I)**    Employees may purchase additional pension from wages.

## SECTION 20—FUNERAL LEAVE:

**(A)**    Effective May 7, 1972, each regular, full-time employee shall be granted up to, but not in excess of three (3) calendar days without loss of pay to arrange for and attend the funeral of a member of his immediate family.  For the purposes of this Section, immediate family shall include the parents, and present spouse of the employee, as well as his brothers, sisters, children, Father-in-law, Mother-in-law and stepchildren.

**(B)**    When an employee attends the funeral of a member of his immediate family which is over five hundred miles one way, up to two (2) additional days without pay shall be granted.

**(C)**    This section does not apply when an employee is on vacation, leave of absence or sick leave.

## SECTION 21—JURY DUTY:

When an employee serves on a jury, he or she shall be paid the difference between regular straight time earnings and jury pay, until his or her term of processing and jury duty is completed. First shift employees, if excused from the jury panel prior to the normal plant lunch break, such employees will report for work for the balance of the shift. Second and third shift employees need not report for work during their tour of jury duty.

## SECTION 22—NON-DISCRIMINATION CLAUSE:

**(A)**     The Employer and the Union agree that each will fully comply with the applicable laws and regulations regarding discrimination against any employee or applicant for employment because of such person's race, religion, color, national origin, disability, sex, or age. This Section shall apply to all employees, including probationary employees.

**(B)**     The Employer shall comply with all applicable provisions of the Family and Medical Leave Act (FMLA).

**(C)**     The Employer and the Union shall adhere to the provision of the Americans with Disabilities Act during the term of this Agreement, and the Union recognizes that such adherence may require the taking of action to reasonably accommodate an employee or applicant. Any action taken by the Employer to reasonably accommodate an employee or applicant shall not be deemed to conflict with the other provisions of this Agreement and shall be binding upon the Employer, the Union and employees covered by this Agreement.

## SECTION 23—SICK LEAVE:

**(A)**     Effective November 1, 1995, regular full-time employees with one year of employment will be entitled to ten (10) one-half days sick leave allowance between that date and the following November 1st. Employees with less than one year's employment as of November 1, 1995 will become eligible on their following anniversary date of employment and have ten (10) one-half days sick leave allowance between that date and their following anniversary date. The sick leave allowance shall be cumulative for a maximum of thirty (30) days.

**(B)**     One-half day's pay shall mean four (4) hours' pay at the employee's regular classification rate for those days which the employee would have worked had the disability not occurred. One day's pay shall mean eight (8) hours' pay.

**(C)**     Sick leave benefits will commence on the third full work day's absence, except that in the event of hospitalization, benefits will commence on the day of hospitalization if it occurs prior to the third day's absence. This waiting period shall apply for each illness in the event sick leave benefits have not been used up in previous illnesses. Sick leave benefits are to be integrated with Unemployment Compensation, Disability or Workers' Compensation.

**(D)**     The Employer may require a doctor's certificate certifying the employee's inability to perform his regular and customary work because of illness and injury.

**(E)**     Sick leave benefits are not convertible to cash.

## SECTION 24—UNION LABEL:

**(A)**     The Bakery, Confectionery, Tobacco Workers and Grain Millers' International Union Label shall be placed on white waxed wrapped bread.

**(B)**     Employees may wear Shop Steward Patches on their shirts.

## SECTION 25—BULLETIN BOARD:

The Employer agrees to provide a Bulletin Board at the Plant for the purpose of posting notices of Union Business and meeting as near as possible to the time clock.

## SECTION 26—LABOR DISPUTE:

**(A)**     The Union and the Employer agree that there shall be no strike or lockout during the term of this Agreement.

**(B)**     It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a lawful primary labor dispute, or refuses to go through or work behind any lawful primary picket line, including the lawful primary picket line of Unions party to this Agreement and including a lawful primary picket line at the Employer's places of business; provided such lawful primary picket lines are sanctioned by the Bakery, Confectionery, Tobacco Workers and Grain Millers' International Union.

## SECTION 27—TERM OF AGREEMENT:

This Agreement shall be in effect from midnight, **July 6, 2008 through and including July 2, 2011**, and shall remain in full force and effect during this period and continue unless sixty (60) days prior to July 5, either party serves written notice upon the other of its desire to amend, modify or terminate the Agreement.  Should either party send such notice, then this Agreement shall continue in effect from year to year thereafter, unless such notice is sent during the sixty (60) days prior to the conclusion of the each succeeding one (1) year period.


**Basque French Bakery**                    **Bakery, Confectionery, Tobacco Workers and**
                                            **Grain Millers' International**
                                            **Union, Local No. 85**

By _Alvin Lewis_
**Alvin Lewis**
**President**

By _[signature]_
~~Marty Zimmerman~~
~~Secretary-Treasurer~~
John Weidenbach
3-10-10

_Basque Bakery_
3-10-10

**Exhibit A**

# EXHIBIT B

**AMENDED AGREEMENT**
**AND**
**DECLARATION OF TRUST**
**PROVIDING FOR THE**
**NORTHERN CALIFORNIA BAKERY & CONFECTIONERY**
**HEALTH & WELFARE TRUST**

As Successor To

BAKERS 119 HEALTH & WELFARE FUND

April, 2002

**THIS AGREEMENT AND DECLARATION OF TRUST** made and entered into as of February 1, 1983, and amended as of April 30, 1985 and April 2, 2002, by and between the SIGNATORY EMPLOYERS hereto, who were members of the California Bakery Employers Association, and other employers and associations of Employers who have subscribed or may hereafter subscribe to this Trust, hereinafter collectively referred to as the "Employer," and the BAKERY, CONFECTIONERY AND TOBACCO WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, LOCAL No. 119 and LOCAL No. 85, hereinafter referred to as the "Union", and the Trustees, and their successors, appointed and subscribing hereto, amends and restates the Agreement and Declaration of Trust between said parties originally made on May 17, 1961, as amended, and recites and provides as follows:

**W I T N E S S E T H**

WHEREAS, the Employers and the Union entered into an Agreement and Declaration of Trust on May 17, 1961, as subsequently amended, all and each of which amendments are incorporated herein, and

WHEREAS, the Trustees of the BAKERS LOCAL 85 and 119 HEALTH AND WELFARE TRUSTS Have determined it to be in the best interests of the beneficiaries of the respective plans, the Union and the Employers to merge the two separate plans into one Health and Welfare Plan, and

WHEREAS, the Trustees have passed and executed resolutions to merge the Local 85 and 119 plans effective May 1, 1985, and

WHEREAS, the BAKERS 119 HEALTH AND WELFARE FUND will be the surviving plan under said merger under the new name and style of NORTHERN CALIFORNIA BAKERY & CONFECTIONERY HEALTH AND WELFARE TRUST, and

**Exhibit B**

WHEREAS, the Employers and the Union desire to further amend this Agreement and Declaration of Trust effective May 1, 1985 in order to effectuate the merger of the two trusts: Now, therefore, in consideration of the mutual covenants contained herein and in the Agreement and Declaration of Trust shall be restated, as amended, as follows:

## ARTICLE I
## DEFINITIONS

As hereinafter used in this Agreement:

(1)     "Trust" means the Trust originally created on June 27, 1952, as thereafter amended, and as continued by this Agreement.

(2)     "Fund" or "Trust Fund" means the trust estate of the BAKERS LOCAL 85 And BAKERS 119 HEALTH AND WELFARE FUND, as merged into the NORTHERN CALIFORNIA BAKERY & CONFECTIONERY HEALTH & WELFARE FUND, successor to the BAKERS 119 HEALTH AND WELFARE FUND, which shall consist of all contributions made or payable by the contributors defined herein, together with all hospital and medical service contracts, insurance policies, dividends, refunds, or other sums payable to the Trustees on account of such contracts, policies or contributions and to any other money, assets, claims or property which are received by, belonging to or are a part of this Trust.

(3)     (a) "Basic Plan" means the schedule of benefits, reimbursements and services agreed to by the Trustees pursuant to the terms of the collective bargaining agreements between the parties, together with the specifications and conditions applicable to the payment or provision for such benefits, reimbursement or services, to which the eligible employees and their eligible dependents shall be entitled under this Trust Agreement and for which contributions provided for herein are payable to the Fund, which said benefits shall be set forth in insurance contracts or in hospital and medical services contracts, or otherwise provided by the Trustees.

(b)     "Retirees' Plan" means the schedule of benefits, reimbursements and services agreed to by the Trustees pursuant to the terms of the collective bargaining agreements between the parties, together with the specifications and conditions applicable to the payment or provision for such benefits, reimbursements or services, to which the eligible retirees and their eligible dependents shall be entitled under this Trust Agreement, and for which contributions provided for herein are payable to the Fund, which said benefits shall be set forth in insurance contracts or in hospital and medical service contracts, or otherwise provided by the Trustees. The collective bargaining agreements do not require that the Trustees maintain any particular schedule of benefits, reimbursements or services for the Retiree Plan and changes in such benefits or services may be made at the sole discretion and judgment of the Trustees.

**Exhibit B**

(c) "Prescription Drug Plan" means the Plan for payment of prescription drug benefits for eligible employees and dependents established pursuant to the terms of the collective bargaining agreements, effective September 1, 1968, as thereafter approved, accepted, and amended by the Trustees on May 14, 1969, and as may be thereafter approved and subsequently amended.

(d) "Plans" means the Basic Plan, the Retirees Plan, the Vision Care Plan and the Prescription Drug Plan as adopted by the Trustees, and changed by them from time to time, which shall be explained in plan booklets which shall be available to the participants and beneficiaries thereof.

(e) "Vision Care Plan" means the Plan for payment of vision care benefits for eligible employees and their eligible dependents established pursuant to the provisions of the collective bargaining agreements, effective September 1, 1977, as thereafter approved by the Trustees and as may be or have been subsequently amended.

(4) The "Union" means the BAKERY, CONFECTIONERY AND TOBACCO WORKERS INTERNATIONAL UNION, AFL-CIO, AND LOCALS 85 and 119 thereof.

(5) "Employer" means the Signatory Employers and all those who are presently association or employer parties to or subscribers to the BAKERS LOCAL 85 and/or 119 HEALTH AND WELFARE TRUST FUNDS and such other employers or association of employers who, by contract with the Union and by subscription hereto under the provisions of Article IX agree to be bound by the terms of this Agreement and to make contributions to the Fund equal to those required to be made to the Fund on the same basis and under the same conditions as those required to be made by employers presently parties to said Trust Fund, for the purposes herein set forth under the terms of their collective bargaining agreements. The term "Employer" also includes the Union and the Trustees as employers within the limits of the provisions of Article VI and in appropriate context of other provisions of this Agreement.

(6) (a) "Employee" means employees covered by collective bargaining agreements between the parties and such other persons who are eligible under the provisions of Article VI.

(b) "Retiree" means a person who has retired under the terms of the Bakery and Confectionery Union and Industry National Pension Fund on or after May 1, 1963, but only during such month or months for which he shall be qualified for and receiving a pension-retirement benefit payment pursuant to the provisions of said Pension Fund. The Eligibility of retirees for plan benefits depends on the minimum rules contained in Article VI (5) and such other rules and conditions as the Trustees may establish.

**Exhibit B**

(7)     (a)     "Dependent" means the spouse of an eligible employee and such unmarried children of an eligible employee who are less than 19 years of age unless such dependent child is attending school as a full-time student as defined by the Trustees, in which case the maximum age shall be extended to 23 years of age.

(b)     "Retiree's Dependent" means the spouse of an eligible retiree, such unmarried children of an eligible employee who are less than 19 years of age unless such dependent child is attending school as a full-time student as defined by the Trustees, in which case the maximum age shall be extended to 23 years of age, and such widow and children of a deceased eligible retiree as the Trustees shall include within the definition of "retiree's dependent" upon such conditions as the Trustees shall determine from time to time.

(8)     "Benefits" means any and all medical, surgical and hospital benefits and payments and reimbursements for eligible employees, eligible retirees and their eligible dependents, including a prescription drug program for eligible employees, and the reimbursement or partial reimbursement of premiums paid by employees, retirees or their dependents for Medicare coverage, and also including life insurance benefits, as may be provided by the Trustees directly or under any medical, hospital or drug service plan or insurance plan developed and established by the Trustees pursuant to the collective bargaining agreements between the parties hereto.

(9)     "Collective Bargaining Agreements" means the respective collective bargaining agreement between the parties hereto as the same shall be in effect from time to time, including amendments thereto.

(10)    "Insurer" means the medical, hospital or drug service organization or insurance carrier or carriers qualified to do business in any state of the United States or in the District of Columbia, with whom the Trustees may contract to provide the benefits defined in subsection (8) above.

(11)    "Trustees" means those currently serving as Trustees under the Northern California Bakery and Confectionery Health and Welfare Trust, and shall include their successors as provided for herein.  The word "Trustees" or the phrase "Board of Trustees" shall be deemed to refer to all the Trustees.

(12)    "Association" means any association of employers which subscribes to this Trust on behalf of its members having a collective bargaining agreement with the Union.

(13)    "ERISA" means the Employee Retirement Income Security Act of 1974, as it may be amended from time to time.

Exhibit B

## ARTICLE II
## PURPOSES AND APPLICATION OF THE FUND

(a)     The Trustees declare that they will receive, hold and disburse the contributions and any other money or properly which comes into their hands, or becomes a part of the Trust Fund, solely for the uses, purposes and trusts provided for herein, and in accordance with the powers, duties and restrictions herein provided.

(b)     The Fund shall be received, held and administered for the uses and purposes provided for in the collective bargaining agreement between the parties and specified in this Trust Agreement.  These include providing medical, surgical, hospital and prescription drug benefits and life insurance and accidental death and dismemberment coverage for eligible employees and their eligible dependents, the reimbursement or partial reimbursement of premiums paid by eligible employees, retirees or their dependents for Medicare coverage and sickness, medical, hospital and other benefits for eligible retirees and their eligible dependents.

The Trustees shall determine the benefits and services to be provided and incorporated in the Plans, giving consideration to the amount of Employer contributions provided for in the collective bargaining agreements and the continued soundness of the Fund.  The determinations made by the Trustees under this paragraph shall be final and binding on all parties to, and beneficiaries of, this Trust Agreement.

(c)     No portion of the Fund shall at any time revert to or be recoverable by and Employer or the Union, or be used for, or diverted to, purposes other than the exclusive purposes of providing benefits to eligible participants and their beneficiaries and defraying the reasonable and necessary expenses of administering the Fund and the Plans provided for herein; provided, however, that any contribution to the Fund made as a result of a mistake of fact may be refunded to the contributing Employer provided such mistake is recognized and the refund is made within one year after the payment of such contribution is received.

(d)     The Trustees shall have the power and duty to use and apply the Fund for the following purposes:

1.     To pay, or provide for the payment of the benefits, reimbursements and services in accordance with the Basic Plan and the Retirees Plan and to pay all premiums or payments on all policies or contracts which may be entered into by the Trustees under the terms hereof as and when said payments fall due.

2.     To establish and accumulate such reserve funds as they may deem necessary for the proper execution of the Trust and to provide for the continuance of the objectives and purposes of this Trust.

**Exhibit B**

3.　　　To pay or provide for the payment of all necessary and reasonable expenses and costs incurred in the operation and maintenance of the Trust and Plans, including bonding and liability insurance and the cost of defending the Fund and the Trustees in litigation, to the extent permitted by ERISA and other applicable law.  The Trustees are empowered to employ or engage advisors, administrators, agent, attorneys, accountants, office staff and others as they may deem appropriate.

4.　　　To reimburse or partially reimburse, or to provide for such reimbursement of premiums paid for Medicare coverage by eligible employees or eligible retirees on behalf of themselves and their spouses. In the case of reimbursement on account of spouse, payment may be made to the employee or retiree whose relationship creates the status of spouse.

5.　　　To pay, or provide for the payment of, prescriptions drug benefits in accordance with the Prescription Drug Plan and vision care benefits in accordance with the Vision Care Plan.

(e)　　　To provide the said benefits, other than reimbursement of Medicare premiums, the Trustees may enter into contracts or policies wherein the Insurer agrees to provide the benefits set forth in the Plans, the cost of which shall be paid out of the Trust Fund.  The Trustees may amend or modify such policies or contracts and may terminate and replace same as they deem expedient and to the best interest of the Trust Fund and its objectives.

(f)　　　No employee, retired employee or other participant or beneficiary shall have any right, title or interest in the Fund or in the contributions made thereto; nor shall they have any right or claim to cash in lieu of such Plan benefits; nor shall they have the right to assign, sell, transfer or encumber their coverage or claims to benefits either during their coverage or after termination of this Trust Fund or through severance of employment, or otherwise, except as provided below in (g).

(g)　　　The Fund and any benefits under the Plans, or monies or property of the Fund shall not be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrances, attachments or charge, by any person other than the Trustees and their duly authorized representatives, and then only to the extent and for the purposes as herein provided; provided, however, that anyone entitled to benefits under the Plans may assign the right to such benefits to the hospital or doctor providing the room, board and/or services or to a pharmacist, druggist, funeral director or mortician for which the benefits are specifically intended as reimbursement, in whole or in part.

(h)　　　The Trustees shall deposit all monies received by them in such bank or banks as they may designate for that purpose and such accounts shall be in the name of the Fund.  The Trustees, in their discretion may, but are not required to, invest such funds as they do not require for current expenditures in Bank Certificates of Deposit, Federal Government notes or in such securities as are legal for the investment of trust funds under the laws of the State of

**Exhibit B**

California. If the Trustees decide to invest such funds, the investment and reinvestment shall be in conformance with pertinent provisions of ERISA and regulations issued pursuant thereto. The Trustees shall not commingle the monies and assets of the Trust Fund with any other fund.

## ARTICLE III
## BOARD OF TRUSTEES

(a)     The administration of the Plans and the Fund is vested in the Board of Trustees consisting of six (6) Trustees, three (3) of whom are selected and appointed by the Union and three (3) of whom are selected and appointed by the Employer. In addition to the above Trustees, the Union and the Employer may each select and appoint one (1) alternate to the above named Trustees, which alternate shall have the full power and authority to act in the place of the Trustee who, after due notice as herein provided, is unwilling or unable to fulfill the duties of Trustee at any meeting of the Board of Trustees.

(b)     Except as otherwise provided herein, the Board of Trustees shall be the named fiduciary, as provided in ERISA, and shall have the authority to control and manage the operation and administration of the Fund and the Plans.

(c)     The duties, responsibilities, liabilities and disabilities of any Trustees shall be determined solely by the express provisions of this Trust Agreement and of ERISA and no further duties, responsibilities, liabilities or disabilities shall be implied or imposed. Any person may serve in more than one capacity with respect to the Fund or Plans (including service both as a Trustee and as Administrator).

(d)     In discharging their duties and responsibilities with respect to the Fund and the Plans, each Trustee and each other fiduciary of the Fund or Plans shall act solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing which a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

(e)     The Trustees shall serve without compensation from the Fund; provided, however, that the Trustees may be reimbursed for expenses properly and actually incurred in connection with the performance of their duties hereunder. In addition, premiums for errors and omissions and fiduciary liability insurance insuring the Trustees may be paid from the Fund to protect the Fund and the Trustees and to make it possible for the Fund to be reimbursed to the extent of any insurance recovery under any such insurance policy; provided, that such insurance, to the extent required by law, shall permit recourse against Trustees who are found to have breached their fiduciary obligations. Nothing herein shall be deemed to preclude a Trustee, Employer or Union from purchasing fiduciary liability insurance for the account of a Trustee or from purchasing a waiver of such right of recourse with respect to such

**Exhibit B**

Trustees.   To the extent allowed by law, the costs and expenses of any action, suit or proceeding brought by or against any Trustees relating to Fund matters (including attorney's fees) shall be paid from the Fund to the extent not paid by insurance, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding that such Trustee breached his fiduciary obligations or was acting in bad faith or was grossly negligent in the performance of his duties hereunder.

(f)      The Trustees shall be selected, removed and replaced as follows:

(1)      Each Trustee shall act as Trustee for the full term of this Trust Agreement and any extension or renewal thereof, or until his death, resignation or removal, as provided herein.

(2)      Any Trustee may resign from his office by giving thirty (30) days' notice to the Union and the Signatory Employers, or to their designated representatives presently serving as Trustees of this Fund.   Such notice shall be effective when deposited in the United States mail addressed to the parties, postage prepaid, and such resignation shall become effective thirty (30) days from such mailing; provided, however, that such resignation may become effective prior to the expiration of such thirty (30) day period by consent of the party entitled to replace the Trustee who has resigned.

(3)      The Employer Trustees shall have the right to remove and replace any Employer Trustee and shall have the right to fill a vacancy caused by his or her death, resignation or removal.  Any Employer Trustee may be removed from office at any time, for any reason, by an instrument in writing signed by a majority of the Employer Trustees and served on the remaining Trustees.

(4)      The Union Trustees shall have the right to remove and replace any Union Trustee, and to fill any vacancy caused by his or her death, resignation or removal.  Any Union Trustee may be removed from office at any time, for any reason, by an instrument in writing signed by a majority of the Union Trustees and served on the remaining Trustees.

(5)      Removals and appointments of Trustees shall be made in writing and delivered to the other parties and to the Trustees.

(6)      Any Trustee who resigns or is removed from office shall forthwith turn over to the other Trustees or the party entitled to replace him or his successor any and all records, books, documents, monies and other assets or property in his possession or under his control as Trustee which belong to the Trust.

(g)      A quorum of the Board of Trustees for the purpose of transaction of business shall be the presence of two (2) Employer Trustees and two (2) Union Trustees.   In the determination of all matters coming before the Trustees, the Employer Trustees collectively shall have one vote and similarly, the Union Trustees collectively shall have one vote.   The

(d)      The Trustees shall deposit all monies received by them in an account or accounts in the name of the Fund in such bank or banks, members of the Federal Reserve System, authorized to do business in the State of California, or in such other investment vehicles as the Trustees may designate, as the Trustees shall from time to time determine. Such deposits may be productive or non-productive of interest in the discretion of the Trustees. The Trustees may invest funds not needed for current expenditures, in accordance with Article II (h).

(e)      All checks or withdrawals from the Trust Fund and said bank accounts shall be signed by one Employer Trustee and one Union Trustee or by a person or persons specifically authorized by the Board of Trustees to do so on their behalf.

(f)      The Trustees may require such reports from the Employers, the Union or any beneficiary, as are necessary for the proper administration of the Trust Fund, the Plans and insurance coverage.    The Trustees, the Administrator, or a Certified Public Accountant appointed by the Trustees, shall have the right at all reasonable times to inspect the payrolls and other records of the Employers to the extent necessary to verify the accuracy of reports based thereon. Any individual employer may be subjected to a field audit of his books and records to determine whether or not contributions have been, and are being, made in accordance with this Trust Agreement and the collective bargaining agreements. The reasonable costs of such audit shall be borne by the individual employer if the audit discloses that such employer has failed to make appropriate, or timely, contributions as required by this Trust Agreement and the applicable collective bargaining agreement.

(g)      The Trustees shall have the power to claim, demand and sue for all payments of money due this Trust Fund. This power is in addition to, and not in substitution for, the right and responsibility of the Union to enforce the provisions of the collective bargaining agreements. The Trustees may compromise, settle or release claims or demands in favor of or against the fund on such terms and conditions as the Board of Trustees deem prudent and appropriate; provided, however, that action under this clause shall not excuse any violation of any collective bargaining agreement.

(h)      The Trustees shall have full and complete title to the entire Trust Fund.

(i)      The Trustees shall establish and maintain a funding policy for the Plans in accordance with applicable law, which policy shall include the determination and establishment of the level and nature of benefits which can and should be provided for in the Plans from available funds. The Trustees shall review from time to time and at least annually, the funding policy, the benefits to be provided, the basis upon which benefits and other costs of the Fund and the Plans are to be paid for and the status of compliance with applicable law in order to assure that the requirements of the law and this Trust Agreement are being met. The Trustees may consult with and rely on the advice and assistance of the independent certified public accountant, the carrier, if any, consultants, advisers and others selected by the Trustees with respect to the establishment and periodic review of the funding policy.

Exhibit B

(j)     The Trustees shall maintain a principal office for the transaction of business, keeping records and receiving notices and communications in connection with the administration of this Trust and Plans.

(k)     The Trustees shall maintain suitable and adequate records of and for the administration of the Fund and the Plans. The books of account and records pertaining to the Fund shall be audited at least once a year by an independent, qualified, public accountant selected by the Trustees. Such independent, qualified, public accountant shall also conduct the examination and render the opinion described in Section 103(a) 3(A) of ERISA. The Trustees, in their discretion, may remove and discharge such accountant and in such cases, the Trustees shall designate a successor independent, qualified, pubic accountant to perform such examination and provide such opinion. A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at such other suitable places as the Trustees may designate. Publication of such statements shall be made to the participating Employers, the Union and the beneficiaries within the time and in the form and manner required by law.

(l)     The Trustees shall prepare, or cause to be prepared, such reports, descriptions, summaries and other information as are required by law or as the Trustees deem necessary and to file and furnish such reports, descriptions, summaries and information to participants and beneficiaries, and to Employers, Unions and government agencies as required by law.

(m)     All expenses of the Trustees required to maintain books of account and records, preparing audits, accounting and reports and all other expenses attendant upon the collection, disbursements, maintenance and protection of the Fund and transactions pertaining to the Fund shall be paid for from the Trust Fund.

(n)     The administrative functions shall include, but not be restricted to:

1.     Establishing and maintaining necessary records to certify the eligibility of employees.

2.     Obtaining and supplying necessary forms, materials and equipment, mailing and other assistance to employers and employees in carrying out the performance of this Trust and Plans.

3.     Collection of contributions and payments to the Fund.

4.     Employment of necessary personnel to perform these functions.

5.     Payment of premiums or charges provided for in policies or contracts agreed to by the Trustees.

Exhibit B

      6.    Reimbursements or partial reimbursements of Medicare premiums paid by eligible employees or retirees upon proof of payment of such premiums.

The Trustees may modify or enlarge these administrative functions as they deem appropriate to the purposes of this Trust.

(o)    The Trustees are authorized to pay the costs of administration out of the Trust Fund.

(p)    Subject to the provisions of subsection (q) hereof, the Trustees, and each of them, shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons and shall be under no duty to make any investigation or inquiry as to any statements contained in any such records, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained. This section is not intended to exempt any Trustee from his or her fiduciary duties under this Trust Agreement or under applicable provisions of law.

(q)    Each Trustee and other fiduciary shall be solely responsible for his own acts or omissions. No Trustee or other fiduciary shall have any liability for a breach of fiduciary responsibility of another Trustee or fiduciary with respect to the Fund or the Plans unless he knowingly participates in such breach, has actual knowledge of such breach and fails to take reasonable remedial action to remedy said breach, or, through negligence in performing his own specific fiduciary responsibilities which gave rise to their status as a fiduciary, he has enabled such other fiduciary to commit a breach of the latter's fiduciary responsibility. Nothing herein shall exempt a Trustee from liability or breach of his fiduciary liabilities under applicable law.

(r)    The Trustees shall provide in the Plans a claims notice and review procedure, in compliance with Section 503 of ERISA and regulations issued thereunder, which will specify procedures to be followed in presenting claims for benefits and the remedies where claims are denied, written notice to a claim applicant whose claim has been denied with specific reasons for the denial in a manner calculated to be understood by the applicant. The applicant whose claim has been denied will be provided a reasonable opportunity for a full and fair review of the decision denying the claim by the Trustees, or by the fiduciary named and designated by the Trustees for this purpose.

(s)    The Trustees shall have the power to commence or defend legal proceedings for or against the Fund; to represent the Fund in all proceedings in any court of law or equity or before any other body or tribunal; and to settle, compromise or submit to arbitration any claims, debts or damaged due or owing to or from the Fund. All costs and attorney's fees in connection therewith shall be a proper charge against the Fund.

(t)     Any and all returned premiums, dividends, or experience rating refunds or other refunds, surplus, reserves, interest or other receipts shall be paid to Trustees, all of which shall become part of the Trust Fund.  Neither the parties, any employee, retiree or other beneficiary, nor any person, firm, association or Union, other than the Trustees, shall have any right, title or interest in such monies or properties of the Fund, or in any part of the Trust estate, except to receive the benefits herein provided for.

(u)     Upon the termination of the Trust, any and all monies or other assets remaining in the Fund after the payment of all expenses and obligations of the Fund and the Trust shall be expended and used for the continuance of one or more benefits of the type provided in the Plans on a non-discriminatory basis and in accordance with Article XII(a).  When all monies have been exhausted, the Trustees shall be discharged of their duties as such and shall have no further responsibilities under this Trust Agreement.

(v)     No employee, retiree, dependent or beneficiary, whose benefits are provided for in insurance policies or contracts, shall have any rights in the Trust Fund or against the Trustees, the Employer or the Union, other than those specified in the insurance policies or contracts procured by the Trustees.  The sole remedy of such eligible employees, retirees, dependents or beneficiaries for non-payment or any claims for benefits, shall be against the Insurer, except in the event of Employer delinquency as provided for in Article V, and except for the right to have claim denials reviewed, as provided for in ERISA and in subsection (r) hereof.

(w)     The Trustees may exercise all rights and privileges granted to the policyholder or contract holder by provisions of any insurance policies or contracts.

## ARTICLE V
## CONTRIBUTIONS

(a)     Each employer shall pay the Trustees the sums for health and welfare and life insurance benefits, vision care benefits, and prescription drug program benefits for employees and their dependents and health and welfare plan for retirees and their dependents as provided for in the collective bargaining agreements between the parties, and amendments and extensions of said agreements, which agreements include the Hand Shop Agreement, the Machine Shop Agreement, the Latin Agreement, and all other agreements between Employers and Local 85 or Local 119 for each employee covered by said agreement who is an eligible employee under the provisions of Article VI and who had worked at least seventy (70) hours in the preceding calendar month.  Payments shall be made on or before the twentieth (20th) day of each month and shall be accompanied by a statement in such form as the Trustees may require showing the names of employees with respect to whom payments are made and the hours, days, weeks or months for which payments are made.

Exhibit B

(b)     The Trustees shall receive and collect all payments and contributions from the Employers and hold said sums in said Trust Fund.   The Trustees will devote such contributions and apply the Trust Fund in accordance with Article II hereof.

(c)     (1)     Each contribution to the Trust Fund will be made promptly and in any event on or before twentieth (20ᵗʰ) day of the calendar month in which it becomes payable on which date said contribution, if not then paid in full, shall be delinquent.   The parties recognize and acknowledge that the regular and prompt payment of Employer contributions is essential to the maintenance and efficiency of the Trust Fund and that it would be extremely difficult and impractical to fix the actual expense, over and above court costs and attorney's fees, and damage to the Trust Fund and to the Plans, which would result from the failure of any Employer to pay such monthly contributions in full within the time above provided. Therefore, the amount of damage to the Trust Fund and the Plans, resulting from any such failure shall be presumed to be the sum of twenty dollars ($20) for each month for which contributions are due and unpaid or ten percent (10%) of the amount of contributions due, whichever is greater, which amount shall become due and payable to the Trust Fund as liquidated damages and not as a penalty, in San Francisco, California, upon the day immediately following the day on which the contribution becomes delinquent and said delinquent contribution due shall be increased by the amount of said liquidated damages, and the whole thereof shall bear interest at the rate of twelve percent (12%) per annum until paid in full.

(2)     The failure of any Employer to make any of the required contributions hereinabove provided for shall be deemed a breach of this Trust Agreement by said Employer, and such Employer shall be personally and directly liable to each employee or retiree damaged by such failure for whatever benefits such employee, retiree, or their eligible dependents were denied because of the Employer's failure to make the required contributions, together with court costs and attorney's fees reasonably necessary in collecting such benefits from such Employer.  In addition, such employer shall be liable to the Trustees for the full amount of all such required contributions which remain unpaid, together with payments for the damage to the Trust Fund resulting from such delinquency and the expenses to the Trust Fund resulting from such delinquency and the efforts to collect same, including court expenses and attorney's fees.

(d)     The acceptance of any payment or the cashing of any check for a contribution from any Employer, or the disposition of monies covered thereby in accordance with this Trust Agreement, shall not release or discharge the Employer from his or its obligation under a collective bargaining agreement for hours worked for which no contribution has actually been received, notwithstanding any statement, restrictions or qualification under which such payment is tendered or made or appearing on the check or any attachment thereto.

(e)     The Trustees, collectively or individually, shall have no liability with respect to the non-payment of contributions by any Employer.  The Trustees shall have the power, in their discretion, to enforce the payment of contributions by Employers who have agreed to

Exhibit B

make such payments. If any Employer defaults in the making of such payments and the matter is not settled to the satisfaction of the Trustees, then the issue may be submitted for decision by filing suit in a court of competent jurisdiction. In the event of court action by the Trustees to enforce payment of contributions by an Employer, the Employer shall be obligated to pay the Trustees' court costs, reasonable attorney's fees and other expense of litigation.

(f)     Upon the failure of any Employer to make the required contributions when due, the Trustees shall have the authority in their absolute discretion to pay or provide for payment from the Fund for the cost of providing the benefits hereunder to an eligible employee of such delinquent Employer or eligible dependents of such employee, but the Trustees shall not be obligated either to said employee, dependent or said Employer to make or provide such payments and they shall incur no liability whatsoever, either individually or collectively, for their failure or refusal to do so. In the event such payments are made by the Trustees from the Fund on behalf of a delinquent Employer, the Fund shall be reimbursed by said Employer for such payments and the Trustees shall have the authority to enforce such right of reimbursement but shall not be obligated to do so.

(g)     Employees of the Employers, Associations, Union or Trustees who are eligible under the provisions of Article VI, subsection (2)(a) and (c) may obtain the benefits of the Plans upon payment through said Employer, Association, Union or Trustees to the Fund in the amount specified in subsection (a) hereof per month per eligible employee commencing the first (1ˢᵗ) day of the month succeeding the acceptance by the Trustees of application for their inclusion or, where Trustee acceptance is not required, the month succeeding notice to the Trustees of such coverage.

(h)     Employers eligible under the provisions of Article VI, subsection 2(b), may obtain the benefits of the Plans upon payment to the Fund in the amounts specified in subsection (a) hereof per month per individual, commencing the first (1ˢᵗ) day of the month succeeding acceptance by the Trustees of their application for inclusion.

(i)     No employee shall be eligible for benefits of the Plans in any month unless the amount of required contribution payable on his account for that month has been received by the Trust in the sum, time and manner herein specified except as provided in subsection (f) hereof.

## ARTICLE VI
## ELIGIBILITY

(1)     The Trustees shall determine the rules and conditions for eligibility of employees, retirees and their dependents for benefits under the Plans including such conditions as length of service, minimum hours of work per month, periods of payment of contributions by an Employer and the conditions under which coverage will be provided, if at all, to employees during periods of temporary unemployment, including a possible

Exhibit B

requirement of contributions from employees during such periods. All such rules and conditions of eligibility shall be determined within the discretion of the Trustees, as they deem necessary and desirable to effectuate the primary purpose of the Trust and shall be incorporated in the Plan or Plans. The Trustees shall, from time to time, review the eligibility requirements and make such changes as they deem necessary for that purpose and for the sound operation of the Fund. The Trustees may declare ineligible any person who has been a party to making a false or fraudulent claim.

(2)     Eligible employees shall include the following persons on the conditions set forth:

(a)     Any Employer or Association party hereto, or subscribing hereto, may, upon application to, and acceptance by the Trustees, include as eligible employees hereunder other employees of such Employer or Association comprising Employer's key organization such as office personnel, superintendents and similar occupations, even though such employees are not members of the union nor covered by the collection bargaining agreements.

(b)     Employers may obtain the benefits provided by the Plans for themselves, partners, proprietors, corporate officers and executives, as the term "Executives" is defined by the Trustees, who are actively engaged in the affairs of the business of the Employer, upon application to, and acceptance by the Trustees, provided that an Employer who applies for coverage of any such person must apply for coverage for all such persons actively engaged in the affairs of the business of such employer.

(c)     Employees and officers of the Union (having no other Employer) such as elected officers, business agents, office personnel, etc., may become eligible employees hereunder, upon application to, and acceptance by, the Trustees.

(d)     The Trustees shall accept the inclusion of participants and beneficiaries under (a), (b) and (c) above only if they have determined that such inclusion will not adversely affect the interests of existing participants and beneficiaries.

(3)     The Trustees shall determine all questions of eligibility under the terms of this Trust Agreement and their determination shall be final and binding on the parties, employees, retirees and dependents.

(4)     The minimum rules for employee eligibility for the Basic Plan, the Vision Care Plan and the Prescription Drug Plan are:

(a)     For initial eligibility an employee covered by a collective bargaining agreement between the parties must have performed at least seventy (70) hours work for a single Employer in each month for the number of consecutive months determined by the Trustees for initial eligibility. Thereafter, an employee's eligibility will depend on the rules and

- 16 -

**Exhibit B**

conditions determined by the Trustees.  For any month to be credited as a month of work for eligibility, an employee must have worked at least seventy (70) hours and the Trust must have received the contribution for that month in accordance with Article V(a).

(b)     Under such non-selective, non-discriminatory rules and conditions as the Trustees may from time to time adopt, the spouse of an eligible employee and such unmarried children of an eligible employee who are less than 19 years of age (or less than 23 years of age if attending school as a full-time student, as defined by the Trustees), may be provided eligibility for benefits of the Basic Plan and the Prescription Drug Plan by the Trustees.

(5)     The minimum rules for eligibility for the benefits of the Retirees' Plan are:

(a)     Retirees who were eligible and qualified and who retired under the terms of the Bakery and Confectionery Union and Industry National Pension Fund between May 1, 1963, and January 1, 1979, shall have met the eligibility requirements in effect at the time they retire.  Their continued eligibility shall depend on meeting the requirements of subsections (b)(iii) and (iv) below and such other rules and conditions as the Trustees may determine.

(b)     Retirees who were eligible and qualified and who retire under the terms of the Bakery and confectionery Union and Industry National pension Fund on or after January 1, 1979, shall meet the following requirements and such other rules and conditions as the Trustees may determine:

(i)     Such retirees must have been employed in a job covered by a collective bargaining agreement to which the Bakery, Confectionery and Tobacco Workers International Union, AFL-CIO, CLC, Local 85 or Local 119, was a party for a total of at least ten (10) years prior to his retirement.  These years need not be consecutive nor immediately prior to retirement.

(ii)     Such retirees must, at the time of their retirement, have been employed by an employer who made the required contributions to the health and welfare plan for at least six (6) months during the twelve (12) month period immediately prior to such retirement, or, if such retiree was unemployed because of disability during any or all of such period, monthly contributions as self payments or by the Trust Fund were made for enough months so that the requirement of at least six (6) month's contributions during each period is met.

(iii) Such retiree shall not be eligible for benefits hereunder during any month in which either the employee or the employee's spouse is actively employed and eligible to receive benefits under the Basic Plan or any other negotiated medical, hospital and surgical benefit plan, or any plan contributed to in whole or in part by an Employer.

**Exhibit B**

(iv)      Such retiree shall not be eligible in any month or months during which he is not paid a pension-retirement benefit under the Bakery and Confectionery Union and Industry National Pension Fund.  An erroneous pension-retirement payment shall not qualify a person as an eligible retiree.

(c)      Under such non-selective and non-discriminatory rules and conditions as the Trustees may from time to time adopt, the spouse of a retiree or children of such retiree or deceased retiree, who are less than 19 years of age (or less than 23 years of age if attending school as a full-time student, as defined by the Trustees), will be provided benefits under the Retiree Plan for a period of twelve (12) months from the death of a Retiree who has been receiving pension-retirement benefits under the Bakery and Confectionery Union and Industry National Pension Fund. This twelve (12) month provision shall be effective for employees retiring on or after January 1, 1983.  Surviving beneficiaries or employees who have retired prior to that date shall be governed by the continuation of benefit policies in effect prior to that time.

## ARTICLE VII
## INSURANCE POLICIES

(a)      The Trustees may apply for, procure and pay for a policy or policies of insurance or medical, hospital or drug service contracts providing benefits in accordance with the collective bargaining agreements between the parties hereto and the provisions of this Trust Agreement and may provide for direct reimbursement or partial reimbursement payments to eligible employees and retirees.  The Trustees, in their absolute discretion, are authorized, in determining the amount and nature of specific benefits for one or more classes of eligible individuals, to take into consideration benefits which may be available to one or more said classes under other group health and welfare plans, trusts, contracts and policies and under health and welfare programs established by Federal or State legislation, it being one of the purposes hereof that the Trustees shall be permitted to preclude a duplication of benefits to an individual through payments under this Trust, even though such duplication affects only a portion of the eligible employees, retirees, or dependents.

The determination by the Trustees that such reimbursement payment and such policy or policies of insurance or medical or hospital service contracts provides all of the benefits agreed to be provided in the collective bargaining agreements between the parties shall be final and binding on all parties and the providing of reimbursement or partial reimbursement payments and the procurement and purchase of such insurance policy or policies or contracts shall constitute a full performance of all obligations to furnish and provide the benefits in accordance with such collective bargaining agreements.

**Exhibit B**

## ARTICLE VIII
## ARBITRATION

Neither this Trust Agreement nor the insurance policies or contracts procured hereunder shall be subject to the arbitration procedures set forth and provided in the collective bargaining agreements between the Employers and the Union. The following matters and no other shall be subject to the arbitration proceedings set forth in this Agreement:

1.      The administration of the Trust Fund.

2.      The distribution of the Trust Fund on termination of the Trust.

3.      The question of whether or not an employee, retiree or dependent thereof is eligible under the terms hereof.

4.      The meaning or interpretation of the language of this Trust Agreement, not including, however, the insurance policies or contracts issued pursuant hereto.

In the event that the Trustees or the parties hereto deadlock on any of the matters subject to arbitration set forth above, the dispute shall be referred in writing to an impartial and competent arbitrator selected by the Trustees, and in the event the Trustees cannot agree on the selection of such an impartial and competent arbitrator, then in a reasonable period of time, either the Trustees appointed by the Union or the Trustees appointed by the Employer may petition the United States District Court for the Northern District of California to appoint such an arbitrator. The expense of such an arbitrator shall represent a proper charge against the Trust Fund. Such expenses to be paid from the Fund shall also include the reasonable costs of preparation and presentation of the respective positions of the Trustees, including attorney's fees, in the amounts authorized and approved by the impartial arbitrator either contemporaneously with or subsequent to his decision. The arbitrator's decision shall be binding on the parties to the arbitration.

## ARTICLE IX
## SUBSCRIBERS

(a)      Any Employer party to a collective bargaining agreement with the Union may become a party to this Trust Agreement upon executing the Subscribers Agreement set forth in Appendix "A". Such Subscribing Employers shall be bound by all of the terms and provisions of this Trust Agreement and shall be entitled to all of the benefits thereof, except that such Subscribing Employers shall not be entitled to participate in the removal or appointment of any Trustee.

Exhibit B

(b)     Any Subscriber Employer may, upon application to and acceptance by the Trustees, include as eligible employees the classes of persons provided for in Article VI, Section 2(a) and (b) hereof.

(c)     No Employer nor the Union shall have any greater rights under this Trust Agreement by reason of the participation of their employees under this Article and Article VI.

## ARTICLE X
## GENERAL AND MISCELLANEOUS

(a)     The Trustees named herein hereby accept the Trust as continued by this Trust Agreement and agree to act in accordance with the terms and provisions hereof.

(b)     The sole financial liability and obligation of any Employer shall be to pay to the Trustees the sums above specified and at the times above designated, including payments required under Article IV(f), Article V(a) and Article V(f), (g) and (h).  No employer shall be liable for any payments required to be made by any other Employer or for the failure of any other Employer to make such payments.

(c)     In the absence of a designated beneficiary, upon the death or legally determined incompetence of any person entitled to benefits under any contract of insurance incurred under this Trust Agreement, the Trustees shall have discretion to provide for the payment of any benefits due to such decedent or incompetent to the husband, wife, parent, child or creditor as they deem just, equitable and proper and to make provision therefor in insurance or other contracts.

(d)     Neither the establishment and existence of this Trust nor any act nor the creation of any fund nor the payment of any benefits shall be construed as giving any person any legal or equitable rights against the Employers, Associations, Union or the Board of Trustees, unless the same shall be specifically provided for in this Agreement or conferred by affirmative action of the Trustees in accordance with the terms hereof, or provided for in ERISA or other applicable law. Nor shall any person entitled to benefits under any insurance policy or service contract secured pursuant to the terms of this Trust have any right, legal or equitable, in the Trust Fund, except such rights as may be required by law.

(e)     It is intended and agreed that this Agreement and the Plans shall conform to all applicable law.  Should this Agreement or a Plan be adjudged illegal in any respect, or should the contributions to be paid not be allowable as a business deduction for the purposes of income tax law, then the Trustees shall amend this Agreement or change the Plan or Plans so far as possible and permissible hereunder, to correct illegal provisions, to constitute such contributions allowable business deductions, and make other necessary changes.

**Exhibit B**

(f)     In case any provision of this Agreement shall beheld illegal or invalid for any reason, said illegality or invalidity shall not affect the remaining parts of this Agreement, but this Agreement shall be construed and enforced as if said illegal or invalid provisions had never been inserted herein; provided, however, that the remaining parts of this Agreement will enable the objectives and purposes of this Trust Agreement to be accomplished.

(g)     In case any provision of this Agreement shall be held illegal or invalid as to any employer or employers, such employer or employers shall not be bound by such provisions, but this shall not release from such provisions any other employers as to whom such provisions are not illegal or invalid.

(h)     The titles of the various articles of this Trust Agreement are inserted solely for the convenience of reference and are not a part of nor shall they be used to construe any term or provision hereof.

(i)     Whenever the context so requires, the singular used herein includes the plural and the masculine pronoun includes the feminine and neuter.

(j)     All notices shall be in writing and shall be deemed delivered when deposited in a United States Post Office, postage prepaid, addressed to the person to whom notice is intended, at the last address as shown on the records of the Trust office, and if no address is so shown, then to the office of the Trust.

## ARTICLE XI
## AMENDMENTS

The provisions of this Trust Agreement may be amended by agreement in writing by all of the Trustees provided that no amendment may divert any assets or property or right thereto of the Fund from the purposes of this Trust, nor shall any amendment permit any return or payment over of any part of the Fund to any of the parties hereto or to any Employer, Union or contributor hereto, or to any Employee except in the form of benefits and services provided for herein; and provided further that the Trustees shall have no authority to amend any collective bargaining agreement between the Union and the Employers, nor to consent to any amendment which would in any way affect the tax deductibility of the contributions to the Fund or which would cause such contributions to constitute income to the employees or result in the Fund becoming non-exempt from taxes.  Subject to the limitations set forth in this paragraph the Trustees are authorized by all parties to this Trust Agreement and by all who may become parties or be subject to the terms of the Trust Agreement, and on their behalf, to amend, alter or modify any of the provisions of this Trust Agreement.

**Exhibit B**

## ARTICLE XII
## TERMINATION

(a)     This Trust Agreement shall remain in effect so long as there exits between the Union and any of the Employers a collective bargaining agreement providing for contributions to the Fund or after the expiration thereof so long as any of the Employers continue to make contributions to the Fund in accordance with the terms of such expired agreement. In no event shall this Trust Agreement terminate sooner than sixty (60) days following the termination of the collective bargaining agreements. Thereafter, this Trust shall terminate and the Trustees shall apply the Fund to pay for or provide for the payment of all obligations of the Fund, and shall apply any remaining balance in such manner as in their opinion will carry out the primary purposes hereof in a manner consistent with ERISA and other applicable law; provided, however, that no part of such balance shall be used for purposes other than providing benefits and services to employees and their dependents. Under no circumstances shall any portion of the Fund, directly or indirectly, revert to or accrue to the benefit any Employer or any Union. Upon termination of the Trust, the Trustees shall continue as Trustees and retain all power and authority necessary for the purpose of winding up and dissolution of the Fund.

(b)     It is the belief of the parties that the Trust herein provided for does not violate any applicable rules against perpetuities, suspension of the power of alienation or against the remoteness of vesting, nor any rule against accumulations. If contrary to the belief of the contracting parties as aforesaid, the Trust herein provided for is limited or affected by any of said rules, then it is hereby declared to be the intent and purpose of the parties, and they hereby agree, that this Trust shall be fully effective and operative for as long as the applicable law permits (subject to the provisions for earlier termination which are contained herein).

**Exhibit B**

**In Witness Whereof**, the parties have caused this Agreement to be executed by their duly authorized representatives as of the day and year first above written.

## TRUSTEES OF THE NORTHERN CALIFORNIA BAKERY & CONFECTIONERY HEALTH AND WELFARE TRUST FUND

By: _James W. Mouer_
James W. Mouer

Date _April 24, 2002_

Executed at:

_Sacramento_, California

By: _Ed Faulkner_
Ed Faulkner

Date _April 16, 2002_

Executed at:

_Delaware_, Ohio

By: _Michael Fouch_
Michael Fouch

Date _5-21-2002_

Executed at:

_San Leandro_, California

By: _Joyce Horner_
Joyce Horner

Date _April 29, 2002_

Executed at:

_Sacramento_, California

By: _Roger Gutierrez_
Roger Gutierrez

Date _5-22-02_

Executed at:

_San Leandro_, California

By: _Mary Christie_
Mary Christie

Date _5/7/02_

Executed at:

_Oakland_, California

**Exhibit B**

## APPENDIX "A"

### SUBSCRIBERS' AGREEMENT
### NORTHERN CALIFORNIA BAKERY & CONFECTIONERY
### HEALTH AND WELFARE TRUST

The undersigned Employer hereby agrees to be a party to the Agreement and Declaration of Trust providing for the Northern California Bakery & Confectionery Health and Welfare Trust, dated February 1, 1983 and as thereafter amended, and agrees to adopt and be bound by all the terms and provisions of said Agreement and to timely pay to the Fund all amounts of money therein provided to be paid.

The applicable collective bargaining agreement requiring contributions to this Trust Fund is with Local No. 85 or Local No. 119, Bakery, Confectionery and Tobacco Workers International Union, AFL-CIO, CLC, which provides that such contributions in an amount prescribed by said collective bargaining agreement(s), as such may be amended and supplemented from time to time, shall commence as of _____, 20_____.

The Employer acknowledges receipt of a true copy of the applicable collective bargaining agreement and the Trust Agreement herein referred to.   Copies of any amendments or supplements to the Welfare Plan may be obtained on request from the Trust Administrator, or from the office of the Local Unions.

The Employer hereby approves and consents to the appointment of the Employer Trustees heretofore designated and ratifies, confirms, approves and consents to all acts taken in the creation and administration of said Trust.

Dated:_____, 20_____.


_____
(Employer)

_____


_____
(Address)

_____

Exhibit B

## APPENDIX "A"

## SUBSCRIBERS' AGREEMENT
## NORTHERN CALIFORNIA BAKERY & CONFECTIONERY
## HEALTH AND WELFARE TRUST

The undersigned Employer hereby agrees to be a party to the Agreement and Declaration of Trust providing for the Northern California Bakery & Confectionery Health and Welfare Trust, dated February 1, 1983 and as thereafter amended, and agrees to adopt and be bound by all the terms and provisions of said Agreement and to timely pay to the Fund all amounts of money therein provided to be paid.

The applicable collective bargaining agreement requiring contributions to this Trust Fund is with Local No. 85 or Local No. 119, Bakery, Confectionery and Tobacco Workers International Union, AFL-CIO, CLC, which provides that such contributions in an amount prescribed by said collective bargaining agreement(s), as such may be amended and supplemented from time to time, shall commence as of _____, 20_____.

The Employer acknowledges receipt of a true copy of the applicable collective bargaining agreement and the Trust Agreement herein referred to. Copies of any amendments or supplements to the Welfare Plan may be obtained on request from the Trust Administrator, or from the office of the Local Unions.

The Employer hereby approves and consents to the appointment of the Employer Trustees heretofore designated and ratifies, confirms, approves and consents to all acts taken in the creation and administration of said Trust.

Dated:_____, 20_____.


_____
(Employer)

_____


_____
(Address)

_____

Exhibit B